JEROME P. COLEMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EDWARD M. AND MARGARET A. MAHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coleman v. Commissioner
Docket Nos. 28983-87, 34893-87
United States Tax Court
T.C. Memo 1990-511; 1990 Tax Ct. Memo LEXIS 564; 60 T.C.M. (CCH) 889; T.C.M. (RIA) 90511; September 25, 1990, Filed Richard A. Levine and Theodore D. Peyser, for the petitioners. Vincent J. Guiliano and Elizabeth P. Flores, for the respondent. WELLS, Judge. WELLS
SUPPLEMENTAL MEMORANDUM OPINION The instant case [1] is before us on petitioners' motion for reconsideration of our opinion in , *565 filed on July 16, 1990 (prior opinion). Petitioners contend, among other things, that the addition to tax for negligence was imposed erroneously against petitioners Edward and Margaret Maher. Upon reconsideration, however, after reviewing petitioners' contentions, we adhere to our conclusion in our prior opinion that the negligence addition was appropriately determined. In our prior opinion, we found petitioner Edward Maher's reliance on the tax opinion prepared by his law firm, the K-1 he received from the Partnership, and Mr. Beningson's business reputation insufficient to satisfy the Mahers' burden of proof with respect to the negligence addition. Petitioners argue that, in refusing to accept Mr. Maher's reliance on the tax opinion as sufficient to defeat a finding of negligence, we have "created a conflict" with three of our prior decisions; namely, (on appeal, *566 9th Cir., June 7, 1990; on appeal 5th Cir., June 12, 1990); ; and Davis v. commissioner, , and have disregarded the Supreme Court's decision in . We disagree. While the Ewing and Gralnek cases cited by petitioners do attach significance to the taxpayers' reliance on tax opinions included in promotional materials, the cases do not establish a blanket rule that such reliance defeats imposition of the negligence addition. As we stated in , affd. , "Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. First, it must be established that the reliance was reasonable." Negligence is defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *567 (quoting (emphasis supplied). In , we found that the taxpayers' "good faith" reliance on a law firm to formulate the straddle program in issue (including reliance on the firm's tax opinion included in promotional materials) was not unreasonable "under the circumstances of this record." . We specifically noted in Ewing that the tax opinion "described in detail, with citations to case law and statutes, the tax consequences which, in the opinion of the author, could be expected by investors from different methods of closing positions in straddles." . Unlike in Ewing, we found in our prior opinion that "The content of the tax opinion allegedly relied upon by Mr. Maher should * * * have alerted him as to the necessity of seeking independent advice on the availability of the promised tax benefits." P-H Memo. T.C. par. 90,357 at 1704. Our reference to "the content of the tax opinion," was meant to encompass not only its warning to investors *568 not to construe the opinion as advice but also its lack of reasoning in the section of the opinion dealing with profit objective. That section contained only a brief description of the operation of section 183, [2] excerpts from the section 183 regulations, and the following analysis: In this case, you have represented to us that the operations of the Partnership will be conducted in a businesslike manner and that businesslike books and records will be maintained with the assistance of qualified professionals. Obviously, there is no element of personal pleasure or recreation involved in the contemplated activities of the Partnership. Finally, you have represented to us that the Partnership's activities have been entered into with a definite objective to derive a profit. Accordingly, based upon your representations and an analysis of the factors set forth in the relevant Treasury Regulations, we are of the opinion that the Partnership may reasonably be expected to possess the requisite profit motive under section 183 of the Code, so that its deduction of research and experimental expenditures should not be disallowed on the ground that the Partnership's activities are not *569 engaged in for profit. [Emphasis supplied.] At the time that Mr. Maher decided to invest in the Partnership, he had been an attorney at Townley & Updike, the firm that prepared the tax opinion, for 37 years; he specialized in corporate and commercial work, including securities offerings. (Mr. Maher's name appeared fourth on the Townley & Updike letterhead used for the first page of the tax opinion.) A person of Mr. Maher's experience should have heard "warning bells" in view of the tax opinion's reliance on a profit objective representation from the general partner and lack of meaningful analyses of the profit objective issue. See . One of the section 183 regulations quoted on the prior page of the tax opinion stated that "In determining *570 whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent" (emphasis supplied), yet the tax opinion relied upon the profit objective representation and contained no analysis of objective facts supporting potential profitability. On cross examination, Mr. Maher admitted that he did not think he saw any projections of revenue and royalties in connection with the transaction in issue. Thus, Mr. Maher did not possess any documentation of the expected profitability of the Partnership that could have lent additional credibility to the tax opinion's conclusion. The other cases cited by petitioners with respect to reliance on a tax opinion are distinguishable from the instant case. In , we specifically noted that the taxpayers had "sought the advice of others" in addition to relying on the tax opinions and letters from Price Waterhouse concerning financial forecasts which appeared in the private offering memoranda. P-H Memo T.C. par. 89,433 at 2108. In addition to reading a private offering memorandum, one of *571 the taxpayers in Gralnek had consulted with his accountant and attended a seminar; another taxpayer relied upon the recommendation of one of the "preparers" of the partnership (a registered broker dealer) as well as on his own experience in a prior deal involving the same individuals; and a third taxpayer was advised by his accountant and also was familiar with the computer equipment being leased and the end users involved. Unlike in Gralnek, petitioners have presented no evidence that Mr. Maher relied upon any advice directed to him personally in deciding to invest in the Partnership.[3] In fact, on cross examination Mr. Maher admitted that, although he knew Mr. Beningson, he did not speak to him about becoming a limited partner in the Partnership. The evidence also indicates that Mr. Maher was not contacted about becoming a limited partner until the last week of 1981, and became a limited partner by December 31, 1981. *572 The Davis case cited by petitioners is also distinguishable in that it focuses primarily on the taxpayers' reliance on their own attorney, who recommended the investment at issue. We believe that there is a distinction between relying on "a trusted and long-term adviser," as in Davis, and relying on a tax opinion that specifically warns the investor not to regard it as advice but to consult independent tax counsel. While petitioners criticize our reference to such disclaimers on the grounds that they are well known as "Boiler Plate provisions," petitioners characterize such provisions as "included to protect the attorneys from being in privity with the reader and thereby shield the attorneys from any claims of malpractice," a characterization that reinforces our reasoning. It also should be noted that our prior opinion is not unique in referring to such disclaimers in support of a finding of negligence. See ; [4]; . None of the cases cited in petitioners' motion mention such disclaimers. *573 For similar reasons, petitioners' reference to the Supreme Court's decision in is unpersuasive. In Boyle, the Supreme Court held that an executor was not excused from the late filing addition under section 6651(a)(1) although such late filing resulted from an oversight *574 by the attorney he retained to handle the estate. In reaching that conclusion, the Court distinguished a taxpayer's failure to meet a statutory filing deadline -- which cannot be excused by reason of reliance on an attorney -- from a situation in which "an accountant or attorney advises a taxpayer on a matter of tax law," (emphasis in original). In the latter situation, the Supreme Court stated that: When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" do not demand such actions. [; emphasis in original and citation omitted.] The foregoing language in no way suggests that a taxpayer may be excused from *575 the negligence addition based on his reliance on a tax opinion and prospectus that specifically disavow such reliance. Requiring the taxpayer to seek independent advice in circumstances such as those present herein is not equivalent to requiring him to seek a "second opinion," rather, it is merely requiring him to seek "advice" for the first time. Cf. (unsophisticated investors not liable for negligence addition where they relied on the expertise of their financial advisor and accountant and monitored their investment). Petitioners also request that we reverse our decision granting respondent's motion to amend his answer to assert the increased rate of interest under section 6621(c) against petitioner Jerome Coleman. In originally denying respondent's motion to amend his answer at trial, we stated that separate taxpayers are each "entitled to their day in court on the question of negligence" and that "the facts are not exactly the same with respect to each taxpayer." Our reasoning only applies with respect to the negligence addition (which respondent moved to assert along with the increased rate of interest). *576 Unlike in the case of the negligence addition, the facts necessary to trigger the increased rate of interest under section 6621(c) are identical with respect to the taxpayers in both dockets. Respondent, however, bears the burden of proof on the issue of increased interest as against petitioner Jerome Coleman. [5]
Upon further review of the evidence on the issue of profit objective (a determination made at the Partnership level), we adhere to the conclusion reached in our prior opinion as to the applicability of increased interest against petitioner Jerome Coleman. Even though respondent properly bears the burden of proof on such issue, we think that the evidence adduced at trial satisfies respondent's burden of proof. We also note that petitioner Jerome Coleman was notified in writing, in advance of trial, of respondent's intention to claim increased interest in his docket. Respondent's notification was made in accordance with an announcement *577 made by this Court in a press release on January 10, 1985. For the foregoing reasons, we find that petitioner Jerome Coleman was not prejudiced by the granting of respondent's motion concerning increased interest. We have considered all of petitioners' other arguments and find them without merit. To reflect the foregoing, An appropriate order will be issued. Footnotes
1. The cases consolidated herein are collectively referred to as "the instant case."↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. We note that Mr. Maher testified that another partner at Townley & Updike had contacted him about becoming a limited partner in the Partnership. However, Mr. Maher's testimony in that regard does not demonstrate that he relied on advice of that partner in deciding to invest. Mr. Maher stated that: I think when I first spoke with Mr. Olick he said there are four or five of us in this now, do you want to get in, and he explained to me what was what, in general outlining the partnership, and I said it sounds great.↩
4. In , we stated: Petitioners also argue that the additions to tax for negligence are avoided because they relied on the prospectuses provided by the promoters as would be expected of a reasonable, prudent person. We disagree. Each prospectus included several caveats with respect to the Federal income tax consequences of the transactions and included the warning, "Accordingly, each prospective Limited Partner is urged to consult his own tax advisor with respect to the Federal * * * income tax consequences to him of his investment in the Partnership." P-H Memo T.C. par. 90,172 at 786.↩
5. See .↩